UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL FRANCIS DEUTSCH,

                      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

Case No. 15-CV-874-JPS

ORDER

      Michael Deutsch applied for disability insurance benefits ("DIB") on June 21, 2012. (*See, e.g.*, Docket #14 ("Tr.") 19). His claim was denied initially and on reconsideration, so he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 19) On December 4, 2014, Mr. Deutsch appeared before ALJ Timothy Malloy for that hearing. (*See, e.g.*, Tr. at 38–69 (transcript of hearing)). Both Mr. Deutsch and vocational expert ("VE") Leslie Goldsmith testified at the hearing. (Tr. at 38–69) Following the hearing, the ALJ issued a decision finding that Mr. Deutsch had the residual functional capacity ("RFC") to perform light work, with some minor additional limitations. (*E.g.* Tr. at 22–25). The ALJ, therefore, determined that Mr. Deutsch could perform his past relevant work as "director of supply/purchasing agent, plant manager/production manager, and online sales rep as generally performed." (Tr. at 25–26). Mr. Deutsch requested review of that decision with the Social Security Appeals Council, but it denied that request. (*E.g.* Tr. at 1–6). Accordingly, Mr. Deutsch appealed the ALJ's decision by filing this case. (Docket #1). The matter is fully briefed (Docket #11; #13; #15), and the Court will now decide it.

1.  MR. DEUTSCH'S ARGUMENTS

The Court begins by discussing Mr. Deutsch's arguments in favor of reversal of the ALJ's decision. Broadly stated, Mr. Deutsch made three separate arguments in his opening brief:

(1) that the ALJ erred in finding that Mr. Deutsch could perform his past relevant work because, even assuming the ALJ's RFC determination was correct, that RFC determination would have precluded Mr. Deutsch's ability to perform his past relevant work (Docket #11 at 4–6);

(2) that the ALJ erred in reaching his RFC determination because he did not adequately consider an opinion from Mr. Deutsch's treating specialist (*id.* at 6–17); and

(3) that the ALJ erred in reaching his RFC determination because he did not properly assess Mr. Deutsch's pain complaints (*id.* at 17–22).

Mr. Deutsch has since abandoned the first of those arguments. (Docket #15 at 1 n.1 ("Upon further reflection, Plaintiff withdraws his assignment of error with respect to the ALJ's step 4 [past relevant work] finding. *See* Pl.'s Brief, pp. 4-6.")). That leaves only the second and third arguments—both asserting that the ALJ erred in reaching his RFC determination—for decision, here.

2.  ANALYSIS

The Court will address each of Mr. Deutsch's arguments in turn, providing relevant factual information as necessary.

2.1  Consideration of Treating Specialist's Opinion

Mr. Deutsch first argues that the ALJ improperly discounted the opinion of Oscar Wille, M.D., a pain management specialist who treated Mr. Deutsch. (*See* Docket #11 at 6–17). In addressing that argument, the Court will describe the ALJ's actual statements regarding Dr. Wille's opinion, then

Page 2 of 19
Case 2:15-cv-00874-JPS   Filed 03/30/16   Page 2 of 19   Document 16

provide the standard applicable on review, and finally apply that standard to the ALJ's statements.

### 2.1.1 The ALJ's Statements Regarding Dr. Wille's Opinion

The ALJ summarized Dr. Wille's findings and discounted them as follows:

> The undersigned has also considered the medical source statement dated August 1, 2013, from Dr. Wille, the claimant's pain management physician, who indicated that he had seen the claimant on three occasions for chronic low back pain and lumbar spondylosis. It was his opinion that the claimant had significant limitations, including a limitation to sitting up to 30 minutes and standing up to 20 minutes continuously and that in an 8-hour day, the claimant could sit 4 to 6 hours and stand/walk less than 2 hours. It was also his opinion that the claimant could lift and carry less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely, that he was limited to rare occasional twisting and stooping (bending), and that he would be absent four days per month. He stated that the claimant's pain flares depended on required pace of work (Exhibit 13F). The undersigned gives this opinion little weight, as these limitations are inconsistent with objective finding[s] in the record, including Dr. Wil[l]e's own treatment notes which, as detailed above, show minimal objective findings at most. In addition, there is no objective evidence of any difficulties with standing or walking, and examinations have consistently documented that the claimant had normal gait and station (Exhibits 5F, 8F-10F, 12F, and 14F). Further, as Dr. Wille noted, at the time of this assessment, he had seen the claimant on only three occasions and, as such, had not yet established a long treating relationship with the claimant.

(Tr. 24–25). The ALJ then went on to point out that Dr. Wille's opinion was also inconsistent with Mr. Deutsch's own reported activities. (Tr. 25).

### 2.1.2 Applicable Standard of Review

Generally speaking, the ALJ was required to give Dr. Wille's opinion controlling weight unless he determined that Dr. Wille's opinion "is

Page 3 of 19

Case 2:15-cv-00874-JPS   Filed 03/30/16   Page 3 of 19   Document 16

'inconsistent with the other substantial evidence.'" *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016)[1] (quoting 20 C.F.R. § 404.1527(c)(2); citing *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). The Seventh Circuit has "defined 'substantial evidence' as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

Furthermore, even where an ALJ does not give a treating sources opinion as controlling (as appears to be the case for Dr. Wille's opinion here), the ALJ is still required to determine *how much weight* to give the opinion, applying several factors:

    (1)    the length and frequency of Mr. Deutsch's treatment relationship with Dr. Wille;

    (2)    the nature and extent of that treatment relationship;

    (3)    the amount of relevant evidence supporting Dr. Wille's opinion;

    (4)    the consistency of that opinion with the record as a whole;

    (5)    whether Dr. Wille specialized in the medical issues pertaining to his opinion; and

    (6)    any other factors that come to the ALJ's attention.

---

[1] In *Loveless*, the Seventh Circuit made clear that neither a complainant's subjective complaints nor a doctor's opinion about a claimant's ability to work should be treated as a medical opinion simply because they are included in medical records. 810 F.3d at 507 (citing 20 C.F.R. §§ 404.1527(c)(3), 404.1527(d)(1), 404.1528(a); *Bates v. Colvin*, 736 F.3d 1093, 1100 (7th Cir. 2013); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Johansen v. Barnhart*, 314 F.3d 283, 287–88 (7th Cir. 2002)). Dr. Wille's opinion does not fall into either of those categories (nor does the Commissioner argue that it does).

20 C.F.R. § 404.1527(c)(2–6). *See also Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) ("Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted to simply discard it," but must instead "consider certain factors in order to decide how much weight to give the opinion…"); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (requiring "good reasons" for discounting a treating physician's opinion) (quoting *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010)). The Seventh Circuit has stated that it will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 Fed. App'x 738, 740 (7th Cir. 2010); citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)). However, it is clear that, if the ALJ had entirely failed to consider the factors, this Court would be required to find harmful error and to remand the case for a new hearing. *See Scrogham*, 765 F.3d at 697 & n.8 (reversing where ALJ failed to discuss 20 C.F.R. § 404.1527(c) factors).

### 2.1.3 Application of Standard to ALJ's Decision

There are two questions that the Court must answer regarding the ALJ's decision to discount Dr. Wille's opinion. First, the Court must answer whether Dr. Wille's opinion was, in fact, inconsistent with the other substantial evidence, such that the ALJ's decision not to accord it controlling weight was appropriate. *See, e.g.*, *Loveless*, 810 F.3d at 507. If the answer to that question is "no," then the Court would be obliged to reverse the ALJ's decision. If, on the other hand, the answer to that question is "yes," then the Court must go on to answer the second question. The second question is whether the ALJ appropriately applied the six factors listed in 20 C.F.R. § 404.1527(c)(2–6) in determining the amount of weight to give Dr. Wille's opinion. *See Scrogham*, 765 F.3d at 697.

The best answer to the first question is, unfortunately, "maybe." In deciding not to give Dr. Wille's opinion controlling weight, the ALJ stated, "[t]he undersigned gives this opinion little weight, as these limitations are inconsistent with objective finding[s] in the record, including Dr. Wil[l]e's own treatment notes which, as detailed above, show minimal objective findings at most." Unfortunately, the ALJ did not provide much analysis to reach that conclusion; it seems to beg at least one question: *which* objective findings are Dr. Wille's reported limits inconsistent with? To be sure, the ALJ provided an extensive run-down of the medical evidence. (Tr. 22–24). But the ALJ never provides any analysis to connect all of that evidence to his conclusion that Dr. Wille's findings were inconsistent with objective findings in the record. (*See* Tr. 24–25).[2] Yet, if the Court goes looking for substantial evidence that Dr. Wille's report is inconsistent with, it might be able to find it, at least in the opinions of the state agency medical consultants, who found Mr. Deutsch was more capable than Dr. Wille had opined. (*See, e.g.* Tr. 71–78, 80–89). And the Seventh Circuit, albeit in an unpublished order, recently stated that a treating specialist's opinion "may be discounted if internally

---

[2]The Commissioner tries to provide the analysis. (*See, e.g.*, Docket #13 at 20 (arguing that ALJ found Dr. Wille's opinion was "not well-supported by clinical signs and laboratory findings."), 21 (arguing that ALJ cited evidence showing that Mr. Deutsch did not have major issues with movement and "[i]t stands to reason that, were Plaintiff unable to walk more than 2 blocks without pain or resting, that there would be some evidence of this on clinical examination."), 22 (noting that doctors reported mild changes, that Mr. Deutsch performed daily activities, and that the state agency physicians generally found less limitations than Dr. Wille had)). But the Court is concerned that this is the sort of post-hoc rationale that the Seventh Circuit has previously criticized. *See* Pierce v. Colvin, 739 F.3d 1046, 1050 (7th Cir. 2014) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir.2009)); *but see Wyatt v. Astrue*, No. 11-CV-874, 2012 2358149, *7 (S.D. Ind. June 20, 2012) (cited by the Commissioner for the proposition that harmless error analysis is exception to *Chenery* doctrine).

inconsistent or inconsistent with a consultant's opinion." *Lazier v. Colvin*, 601 F. App'x 442, 446 (7th Cir. 2015) (citing *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)). Applying that standard, the Court can find that the ALJ identified an internal inconsistency and an inconsistency with the state consultants' opinions,[3] thus allowing him to decline controlling weight.

But that simply brings the Court to the second question—whether the ALJ applied the six factors from 20 C.F.R. § 404.1527(c)(2–6) in determining how much weight to give Dr. Wille's opinion—and the Court does not believe that the ALJ fully analyzed each of those factors.

To be sure, the ALJ did, at least implicitly, consider most of the factors. As best the Court can tell, the ALJ identified the following reasons for giving Dr. Wille's opinion "little weight":

(1) the lack of objective findings in Dr. Wille's opinion;

(2) the general lack of objective evidence "of any difficulties with standing or walking," together with the fact that "examinations have consistently documented that the claimant had normal gait and station (Exhibits 5F, 8F-10F, 12F, and 14F)."

(3) the fact that Dr. Wille had seen Mr. Deutsch on only three occasions at the time he issued his opinion, and thus had a limited relationship with Mr. Deutsch at that time; and

(4) the ALJ's belief that Dr. Wille's limitations were inconsistent with Mr. Deutsch's reported activities.

---

[3]In truth, both the internal and external inconsistencies are minor. Internally, the Court could possibly even explain the inconsistency away. The ALJ stated that the report was internally inconsistent, because it called for major limitations in spite of minor objective findings. (Tr. 24). But Dr. Wille *did* find that Mr. Deutsch exhibited a "Pain Disorder" (Tr. 471), which might have influenced Dr. Wille's opinion that Mr. Deutsch would have difficulty working. And, in terms of external inconsistency, Dr. Wille's opinion was not significantly different than the agency consultants'. (*Compare* Tr. 471–73 *with* Tr. 71–78, 80–89).

(*See, e.g.*, Tr. 24–25). The third reason—the limited treating relationship—satisfies the first two factors from 20 C.F.R. § 404.1527(c)(2)(i–ii), both of which relate to the length and extent of the treating relationship. The first reason—lack of objective findings in Dr. Wille's opinion—arguably satisfies the third factor from 20 C.F.R. § 404.1527(c)(3), which relates to the "supportability" of the opinion. And the second and third reasons, meanwhile, address the fourth factor from 20 C.F.R. § 404.1527(c)(4), which relates to the consistency of reports with other evidence in the record.[4]

But that still leaves one other factor unaddressed: the potential additional weight due to Dr. Wille's opinion by virtue of Dr. Wille's specialization in pain treatment, *see* 20 C.F.R. § 404.1527(c)(5).[5] The Commissioner argues that the ALJ did, in fact, address that factor simply in acknowledging that Dr. Wille was a pain specialist. (Docket #13 at 22–23). In this Court's opinion, there is a difference between *acknowledging* a doctor's specialty and actually *considering* that specialty when deciding how much weight to give that doctor's opinion.

The Court believes that the ALJ's failure to analyze that one factor is likely sufficient to warrant remand. *See, e.g.*, *Scrogham*, 765 F.3d at 701 ("The ALJ, however, did not discuss any of these factors in her opinion, so we cannot assess whether she appropriately chose not to give much weight to the treating physicians' opinions.") & n.48 ("We cannot say that the failure to consider these factors is harmless; we have acknowledged their

---

[4]As the Court will discuss further in Section 2.2.3, *infra*, it highly doubts that the ALJ's discussion of Mr. Deutsch's daily activities are inconsistent with Dr. Wille's or Mr. Deutsch's own assessments of Mr. Deutsch's pain and abilities.

[5]Because the ALJ did not identify any "other factors," *see* 20 C.F.R. § 404.1527, the Court will ignore that provision.

significance in many of our prior cases.") (citing *Elder*, 529 F.3d at 415; *Amax Coal Co. v. Franklin*, 957 F.2d 355, 359 (7th Cir. 1992); *Allen v. Weinberger*, 552 F.2d 781, 785 (7th Cir.1977); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007)). Granted, both *Scrogham* and *Elder* deal with situations with practically no discussion of the factors, but given the significance of each factor, in this Court's estimation, the failure to consider even one factor is potentially problematic. For instance, what if Dr. Wille's specialization might have played a role in his failure to provide more objective findings in his opinion; a pain specialist might understand that pain does not always come with objective findings. *Cf. Stark v. Colvin*, --- F.3d ----, No. 15-2352, 2016 WL 698255, *3 (7th Cir. Feb. 22, 2016) ("[t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence.") (citations omitted).

In any event, whether or not this error justifies remand, the Court is obliged to remand on the separate and sufficient basis of the ALJ's credibility determination. On remand, if the ALJ declines to extend controlling weight to Dr. Wille's opinion, the ALJ should ensure that he or she considers every factor described in 20 C.F.R. § 404.1527(c)(2–6) to determine how much weight to give to Dr. Wille's opinion.

### 2.2 Credibility Determination

Mr. Deutsch also argues that the ALJ improperly discounted the credibility of Mr. Deutsch's reports of pain. (*See* Docket #11 at 17–22). The Court will again provide the ALJ's statement, the legal standard, and then apply that standard.

#### 2.2.1 The ALJ's Credibility Determination

The ALJ largely discounted Mr. Deutsch's credibility. In doing so, the ALJ wrote the following:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> The claimant has alleged the inability to work due to back and knee problems and pain (Exhibit 3E). He also reported that, because of these impairments, in an 8-hour day he could sit only 3 to 5 hours, stand 1 to 2 hours, and walk ½ hour (Exhibit 12E). The medical evidence of record establishes that the claimant has been diagnosed with lumbar facet degenerative joint disease and mild bilateral knee degenerative joint disease. However, the alleged severity of the claimant's symptoms and functional limitations is not substantiated by the medical evidence of record. For example, as detailed above, results of objective medical testing and physical examinations have shown only minimal findings at most, and are not very impressive given his reported level of pain. X-rays and MRIs have not shown severe pathology and physical examinations do not support marked limitations. Further, the claimant has only been treated conservatively and there is no evidence that surgery has been recommended or is currently being considered. In addition, the record documents that the claimant has not always followed through with recommended treatment. Although the undersigned acknowledges that the claimant has been unable to do some things due to financial considerations and lack of insurance during at least part of [the] time since his alleged onset date, he has not always followed through with recommendations that were within his control, such as stopping smoking and becoming more active (1F, 2F, 4F, 5F, 7F–12F, 14F), which does not reflect favorably on his credibility.

(Tr. 24). Elsewhere in his decision, the ALJ had a bit more to say about Mr. Deutsch's credibility:

> Such significant limitations[6] are also inconsistent with the claimant's reported activities. In spite of his impairments, he has remained fairly active. For example, he reported that he is able to cook, do light cleaning, do laundry, mow the lawn, garden, walk, drive, shop, read, exercise, care for his pets, and care for his personal needs (Exhibits 7E, 12E, testimony).
>
> Interestingly, the claimant has also had some inconsistencies in his reports. For example, on a physical therapy evaluation on February 6, 2013, the claimant reported that he had previously had injections that did not help (Exhibit 7F/2). However, treatment notes following the lumbar facet injections in 2008 show that he reported 80% relief in his pain (Exhibit 1F/5, 7). These statements are somewhat inconsistent and undermine the credibility of his allegations, making him only partially credible.

(Tr. 25). In short, as best the Court can tell, the ALJ based his credibility finding on four separate parts:

(1) the inconsistency of Mr. Deutsch's reports of pain with objective medical evidence;

(2) Mr. Deutsch's minor failures to follow through with recommended treatment;

(3) Mr. Deutsch's ability to perform household chores and care for himself; and

(4) a single minor difference between two statements regarding the effectiveness of injections that Mr. Deutsch.

(*See, e.g.*, Tr. 24–25). The Court also notes that the ALJ did not mention Mr. Deutsch's extensive past work history in reaching a credibility determination. (*See, e.g.*, Tr. 24–25).

---

[6]Presumably, the ALJ is discussing limitations as suggested by Dr. Wille and/or Mr. Deutsch, himself, although this is somewhat unclear.

### 2.2.2 Applicable Standard of Review

This Court is required to accept the ALJ's credibility finding unless it is "patently wrong." *See, e.g., Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).[7] However, several Seventh Circuit decisions restrict the evidence that an ALJ can permissibly use to reach a credibility determination, and those restrictions are important to this case.

First, the Seventh Circuit has made clear that the "meaningless boilerplate" statement that all ALJs make in issuing a credibility determination—the long sentence that begins "[a]fter careful consideration of the evidence…"—cannot, itself sustain a credibility finding. *See, e.g., Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir.

---

[7]The parties spend a great deal of time disputing whether the "patently wrong" standard is the one that actually applies. The Court notes, however, that as recently as February 4, 2016, the Seventh Circuit has expressly endorsed the "patently wrong" standard (albeit, in an unpublished opinion). *Summers v. Colvin*, --- F. App'x ----, No. 15-1819, 2016 WL 423711, at *2 (7th Cir. Feb. 4, 2016) (citing *Pepper*, 712 F.3d at 367). *See also Stark,* 2016 WL 698255, at *3 (implicitly applying "patently wrong" standard: "We agree with Stark that the ALJ's finding that Stark's own testimony supports the [RFC] assessment is patently wrong."). The Court, however, certainly acknowledges that in many cases, the Seventh Circuit does not explicitly discuss the "patently wrong" standard; a review of opinion from the first several months of this year, alone, reveals several that fall into this category. *See, e.g., Dimmett v. Colvin*, --- F.3d ----, No. 15-2233, 2016 WL 946628, at *3 (7th Cir. Mar. 14, 2016) (briefly criticizing credibility finding without discussing "patently wrong" standard); *Stage v. Colvin*, --- F.3d ----, No. 15-1837, 2016 WL 492333, at *5 (7th Cir. Feb. 9, 2016) (finding that ALJ relied on "improper grounds" to reach credibility determination, but not that the determination was "patently wrong"); *Loveless*, 810 F.3d at 507–08. Given that fact, coupled with the rate at which the Seventh Circuit criticized ALJ credibility determinations, the Court can understand why Mr. Deutsch might believe that some lower standard is applicable. The Court will, nonetheless, apply the "patently wrong" standard, because that standard still appears to be operational. *See, e.g., Stark*, 2016 WL 698255, at *3; *Summers*, 2016 WL 423711, at *2.

2010). Use of that boilerplate language, though, is not "automatically ground for remand," as long as the ALJ separately supports his credibility determination. *Stark*, 2016 WL 698255, at *4 (citing *Murphy v. Colvin*, 759, F.3d 811, 816 (7th Cir. 2014)). Nonetheless, as far as this Court can tell, it can largely disregard the boilerplate language in evaluating the ALJ's credibility determination.

Second, the Seventh Circuit has made clear that "[t]estimony of severe pain cannot be disregarded simply because it is not supported by objective medical evidence." *Stark*, 2016 WL 698255, at *3 (citing *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015); *Pierce v. Colvin*, 739 F.3d 1046, 1049–50 (7th Cir. 2014)). Moreover, "pain alone can be disabling." *Stark*, 2016 WL 698255, at *3 (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)); *see also Pierce*, 739 F.3d at 1049–50.

Third, the Seventh Circuit has "repeatedly held improper" consideration of a claimant's activities of daily living. *Stage*, 2016 WL 492333, at *5 (citing *Bjornson*, 671 F.3d at 647; *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005)). The Seventh Circuit may have recently tempered that position: in *Loveless*, it stated that ALJs should not be permitted to "equat[e] activities of daily living with an ability to work," but found that it would be acceptable for an ALJ to "consider[ a Claimant's]…description of his daily activities in assessing whether his testimony about the effects of his impairments was credible or

Page 13 of 19

Case 2:15-cv-00874-JPS   Filed 03/30/16   Page 13 of 19   Document 16

overexaggerated." 810 F.3d at 508 (citations omitted).[8] *But see Stage*, 2016 WL 492333, at *5 ("The ALJ…erred by basing his adverse credibility determination…" partially on the "improper" basis of activities of daily living.").

Fourth, the Seventh Circuit has also noted that "[a]n ALJ is not statutorily required to consider a claimant's work history, but 'a claimant with a good work history is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Stark*, 2016 WL 698255, at *3 (quoting *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015); additional quotation from *Rivera v. Schwieker*, 717 F.2d 719, 725 (2d Cir. 1983) omitted). But, an "ALJ's silence [on this point] is not enough to negate…substantial evidence supporting the adverse credibility finding." *Loveless*, 810 F.3d at 508.

---

[8]The Court must point out that it wonders whether this is a distinction without much difference. Even where an ALJ considers a claimant's daily activities only in the context of making a credibility determination as part of reaching a final RFC determination, the analytical problem inherent in the analysis would still seem to infect the process. The main problem in equating daily activities with an ability to work is that "a person performing chores has flexibility in scheduling, can receive help, and is not held to a minimum standard of performance, unlike an employee." *Stark*, 2016 WL 698255, at *3 (citing *Bjornson*, 671 F.3d at 647). This Court would also point out that it questions, in many cases, what other options a truly disabled person would have besides performing daily activities on their own; typically, a disabled person is not working and so does not have the money to pay someone else to do necessary tasks on his or her behalf. Does a person who is disabled have to forego cooking, cleaning, and washing his or her clothes to establish credibility? In any event, there seems to be little significant difference between: (1) an ALJ finding that a claimant's ability to perform daily activities is not evidence of an inability to work due to pain, on one hand; and (2) an ALJ finding not credible a claimant's reports of pain that prohibit her from working, on the other. In both instances, the fact that the claimant can perform daily activities on his or her own terms (not to mention the necessity of performing those activities) would decrease the value of that information, whether applied to determine a claimant's ability to work through pain or a claimant's RFC in spite of pain.

### 2.2.3 Application of Standard to ALJ's Decision

In light of all of these legal standards, the Court believes that the most complete question it can ask to assess the ALJ's credibility determination is as follows: did the ALJ base his credibility determination on acceptable substantial evidence, so as to overcome his failure to acknowledge Mr. Deutsch's positive prior work history?[9]

The answer to that question is unqualifiedly "no."

The Court begins by pointing out that Mr. Deutsch did, indeed, have a solid work history that the ALJ should have considered in assessing his credibility. Mr. Deutsch worked for 29 consecutive years prior to being let go from his job as a result of downsizing by his long-term employer. (*See, e.g.* Tr. 41–43). He earned severance pay in 2009, then tried to earn money by selling a warehouse full of "obsolete inventory" on eBay in 2010 and 2011. (*See, e.g.*, Tr. 43–44). (And that eBay work probably further exacerbated Mr. Deutsch's back problems, as it required heavy lifting.) In short, until the time of Mr. Deutsch's alleged disability onset (and during some of the period afterwards), Mr. Deutsch had a very positive work history. The ALJ should have considered that fact in reaching a credibility determination, *see, e.g.*, *Stark*, 2016 WL 698255, at *4; *Hill*, 807 F.3d at 868, and his failure to do so can

---

[9]The Court acknowledges that this is a different question than whether the ALJ's credibility determination was "patently wrong." But, in light of *Stark* and *Hill*, it appears that ALJs might now be *required* to consider a claimant's prior work history (assuming that the claimant has a "good work record"), such that failure to consider that fact might outright warrant reversal. *See, e.g.*, *Stark*, 2016 WL 698255 at *4 (citing *Hill*, 807 F.3d at 868). However, *Loveless* seems to rein that in a bit, providing that an ALJ's silence regarding work history will not negate a credibility determination that is, otherwise, based upon substantial evidence. 810 F.3d at 508. The Court will use *Loveless*' formulation.

only be overcome if his credibility determination was otherwise based upon substantial evidence.

Once the Court strips away the unacceptable evidence, there is very little evidence left to support the ALJ's credibility determination. First, the ALJ's determination that Mr. Deutsch's pain reports were inconsistent with objective medical evidence was not appropriate support for an adverse credibility finding. *See, e.g.*, *Stark*, 2016 WL 698255, at *3 (citing *Hall*, 778 F.3d at 691; *Pierce*, 739 F.3d at 1049–50). Second, the ALJ's consideration of Mr. Deutsch's daily activities might also have been inappropriate.[10] *See, e.g.*, *Stage*, 2016 WL 492333, at *5 (citing *Bjornson*, 671 F.3d at 647; *Beardsley*, 758 F.3d at 838; *Gentle*, 430 F.3d at 867); *but see Loveless*, 810 F.3d at 508. Even if not, though, the ALJ's credibility finding could appropriately rest on only three things:

- (1) Mr. Deutsch's minor failures to follow through with recommended treatment;
- (2) Mr. Deutsch's ability to perform household chores and care for himself; and
- (3) a single minor difference between two statements regarding the effectiveness of injections that Mr. Deutsch received.

(*See, e.g.*, Tr. 24–25). And, upon the slightest scrutiny, those three pieces of evidence simply do n0t hold up.

Mr. Deutsch's ability to perform household tasks, for instance, was extremely limited, and not actually inconsistent with his subjective reports of pain. (*See, e.g.* Tr. 47–48, 51, 55–56). The ALJ found it relevant that Mr. Deutsch could do the following things: "cook, do light cleaning, do laundry,

---

[10] And this is even assuming that the ALJ's credibility determination relied on this point. It might not have. *See* n. 2, *supra*.

Page 16 of 19

Case 2:15-cv-00874-JPS   Filed 03/30/16   Page 16 of 19   Document 16

mow the lawn, garden, walk, drive, shop, read, exercise, care for his pets, and care for his personal needs." (Tr. 25). It is not clear how cooking or light cleaning would be inconsistent with Mr. Deutsch's ability to "sit only 3 to 5 hours, stand 1 to 2 hours, and walk ½ hour" during an 8-hour workday. (Tr. 24). Using a vacuum, for instance would reportedly cause Mr. Deutsch 45 minutes of pain. (Tr. 55). Laundry might involve lifting that would exceed Mr. Deutsch's reported capacity, but the ALJ never clarified *how* Mr. Deutsch did his laundry during the hearing; perhaps Mr. Deutsch does small 5-pound loads at a time. As to lawn and garden care, Mr. Deutsch testified that his ability to do that activity was actually very limited and not in any way inconsistent with his reports of pain . (Tr. 48, 56). The only walking he reported was minor and consistent with his reported pain. (*See* Tr. 61). He testified that he *can* drive, but not that he does so often; and, unless he was driving longer periods of time that would require lots of sitting, it is not clear how that would be relevant. (*See* Tr. 48). Shopping, like laundry*, could* hypothetically exceed Mr. Deutsch's capacity, but it does not appear that it *actually did*, and the ALJ did not develop this line of questioning. (Tr. 55–56). It is not clear how reading would have any impact on the credibility of Mr. Deutsch's reports of pain, but assuming that it shows he could sit or concentrate for extended periods, the small amount that Mr. Deutsch reported reading (*see* Tr. 55) would not conflict with his complaints. Any exercise is extremely limited (Tr. 51, 61), and, in any event, the ALJ criticized Mr. Deutsch elsewhere for failing to follow through with doctor recommendations, including greater activity (*see* Tr. 24, 51)—it is not clear whether Mr. Deutsch should or should not have been active. The care for his pets involved only walking his dog for 15 to 30 minutes—there is no indication of anything further such as being required to lift a heavy dog. (*See*

Tr. 61). There is no indication about how an ability to care for his personal needs would conflict with his reports of pain. And, finally, most of these activities—cooking, light cleaning, laundry, mowing the law, walking, driving, shopping, and caring for personal needs—are things that simply *must* be done (unless one can afford to pay another to them). It is not clear how any of this would weigh against Mr. Deutsch's credibility.

Mr. Deutsch's alleged failure to follow through on treatment, meanwhile, was not actually a failure. The two things that the ALJ identified—failure to stop smoking and failure to become more active—are undermined by the record. Mr. Deutsch, in fact, made a number of attempts to quit smoking. (Tr. 443, 452, 457–58). As for activity level, it appears that Mr. Deutsch did some walking (Tr. 61), minor gardening (Tr. 48, 56), and meditation (*see* Tr. 55)—so the Court is confused by what more the ALJ could have expected. Perhaps the ALJ was referring to Mr. Deutsch's choice not to go to the pool to swim. (*See* Tr. 51). But, as Mr. Deutsch explained, he received conflicting recommendations about whether he should swim. (Tr. 51).[11] In short, there is no evidence that Mr. Deutsch actually failed to follow through on treatment.

That leaves only one possible permissible basis for the ALJ's adverse credibility finding: the singular (and very minor) inconsistency between Mr. Deutsch's reports regarding the effectiveness of injections. As Mr. Deutsch points out, there actually is not any inconsistency: in his original report, Mr. Deutsch report 80% pain relief, but noted that a second injection lasted a short period of time (Tr. 281); his later report stated that the injections

---

[11]In any event, this Court would be reluctant to hold a person who cannot pay his mortgage to the potentially-expensive requirement of going to a pool.

provided only short term relief (Tr. 404, 489). And, even if those reports were inconsistent, they are only slightly so and separated by almost four years. That evidence, alone, certainly is not substantial.

In sum, there is practically no evidence to support the ALJ's credibility determination. Meanwhile, the ALJ did not consider Mr. Deutsch's positive and extensive work history. In the absence of substantial evidence to overcome that latter problem, the Court is obliged to find that the ALJ's credibility determination constituted reversible error. *See, e.g.*, *Stark*, 2016 WL 698255 at *4 (citing *Hill*, 807 F.3d at 868); *Loveless*, 810 F.3d at 508.

3. CONCLUSION

For the reasons discussed above, the Court is obliged to vacate the decision of the ALJ and remand for further proceedings consistent with this order.

Accordingly,

IT IS ORDERED that the opinion of the ALJ be and the same is hereby VACATED and REMANDED for further proceedings consistent with this order.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of March, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge